IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWIN WALLACE,
        Plaintiff,

v.

TERRY LEE JORDAN, PHYSICIAN
ASSISTANT at S.C.I. SOMERSET,
et al.,
        Defendants

Case No. 3:06-cv-255-KRG-KAP

Report and Recommendation

Recommendation

      Plaintiff, incarcerated at S.C.I. Somerset, filed a complaint alleging that the defendants violated the Eighth Amendment and Pennsylvania negligence law in the way they treated and failed to treat broken bones in his foot. Defendants moved to dismiss the complaint, docket no. 21, docket no. 23. I recommend that the motions to dismiss be granted in part and the Eighth Amendment claims dismissed for failure to state a claim. Because there are no viable federal claims and no good reason for this court to exercise supplementary jurisdiction under 28 U.S.C.§ 1367, plaintiff's negligence claims should be dismissed without prejudice to pursuing them in state court pursuant to 42 Pa.C.S.§ 5103(b).

Report

      Plaintiff's complaint alleges he broke three metatarsal bones in his right foot in an accident in the prison laundry on Thursday, December 2, 2004. He was issued crutches that evening and told to return to the medical unit at sick call the next morning. On Friday, December 3, 2004, after a three second inspection (without an x-ray and without physically touching the

foot) of the bare foot, defendant physician's assistant Jordan stated that plaintiff probably had a sprain. Plaintiff told Jordan he believed the foot was broken. Jordan ordered plaintiff to come back for x-rays on Monday, December 6, 2004, put him on lay-in status, and gave him an ace bandage and a 30 pack of acetaminophen that was five weeks out of code, telling plaintiff that "they'll still work." Plaintiff alleges he was in pain over the weekend, and also that when he walked to the dining hall he wrapped his foot in the bandage and crammed it into his shoe. On Monday, December 6, 2004, plaintiff had x-rays taken, and turned in his crutches as Jordan had directed the previous Friday. Plaintiff alleges that without crutches every step was now excruciatingly painful and within an hour his foot began to swell. Later that day he submitted another sick call slip. Plaintiff was seen on December 8, 2004, by defendant physician's assistant Solarczyk, who issued plaintiff a cane, another ace bandage, and ibuprofen. Plaintiff alleges it took weeks for the swelling in his foot to go down. On December 10, 2008, plaintiff saw Solarczyk again and Solarczyk told him there were three and possibly four broken metatarsals.

On December 13, 2004, plaintiff sent an inmate request to staff (Form DC-135A) requesting to see an orthopedic specialist. On December 23, 2004, plaintiff was taken to see a Doctor Kates at the Somerset Hospital. Kates allegedly told plaintiff that there was some dislocation in the fracture sites and that he "would have"

prescribed an open toed shoe or sandal. Plaintiff kept using the cane and had x-rays again on January 18, 2005. Plaintiff met with a Doctor Thomas at S.C.I. Somerset on January 26, 2005, but Thomas could not find the most recent x-rays and rescheduled for February 9, 2005. On the latter date, Thomas cleared plaintiff for all activities and told plaintiff he would always experience arthritic pains.

Plaintiff felt pain in his foot during 2005, and wrote to Kates on April 15, 2005, relating that his foot hurt when plaintiff walked normally on it, and also hurt at night. Kates replied that plaintiff should contact the medical unit, which plaintiff did. Plaintiff was seen there by a Doctor Donegan on May 3, 2005. Donegan prescribed naproxen and ordered x-rays. Donegan allegedly was critical of the medical care plaintiff had received to that point. On May 31, 2005, plaintiff met with defendant medical director Doctor McGrath, and on July 5, 2005, plaintiff was examined for orthotic shoes or boots. The boots were issued on August 2, 2005, and allegedly alleviated the pain of walking. On July 11, 2005, Donegan re-issued plaintiff a cane for six weeks and changed plaintiff's prescription to ibuprofen. Donegan told plaintiff that his x-rays showed no sign of dislocation but that that did not rule out muscle or tissue damage. On August 22, 2005, McGrath continued plaintiff's prescription for ibuprofen and took

back plaintiff's cane. McGrath denied plaintiff's request to be seen again by Kates.

Plaintiff further alleges that between August 28, 2005, and October 23, 2005, defendant physician assistants Collins and Berkey caused him to go without his prescribed ibuprofen "for days." They also refused to let him see McGrath. Eventually, on some unspecified day, McGrath saw plaintiff again and extended his prescription for ibuprofen for another seven months. Plaintiff alleges that his foot continues to cause him pain.

Fed.R.Civ.P. 8(a)(2) requires a federal complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently discussed in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007), a complaint must plead "enough **facts** to state a claim to relief that is plausible on its face." <u>Id</u>. at 1974. (my emphasis). The Court of Appeals for the Third Circuit has similarly explained:

Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. See <u>Twombly</u>, 127 S.Ct. at 1965 n. 3.

<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir.2008). Whether the complaint alleges the grounds on which a claim rests depends of course on the substantive law underlying the claim. Here, plaintiff's federal claim arises under the Eighth Amendment line of cases following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976),

which established that prison inmates have a right that prison officials not be deliberately indifferent to their serious medical needs. There is no dispute in this case that broken bones constitute a serious medical need. There is likewise no dispute that the element of deliberate indifference has been defined by the Supreme Court:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). In Estelle v. Gamble the Court reviewed lower court cases to give examples of allegations of fact which are sufficient to provide fair notice of a claim that prison physicians showed deliberate indifference in providing or refusing medical care: allegations that a prison doctor threw away an inmate's ear and stitched the stump rather than treat the prisoner after an altercation; that a prison doctor injected an inmate with penicillin knowing that he was allergic; and that a prison doctor required prisoner to stand after leg surgery despite the contrary instructions of the operating surgeon. 429 U.S. at 104 n.10. By contrast, the inmate plaintiff Gamble was held to have failed to state a deliberate indifference claim against Doctor Gray, the prison medical director, where plaintiff alleged that Gray saw him twice and other prison medical personnel

saw him 17 times over three months. Gamble alleged that the only "treatment" he received for his complaints of severe back pain after a workplace accident in which a 600 pound bale of cotton fell on him was bed rest, muscle relaxants, and pain relievers. Doctor Gray and the rest of the prison medical staff never took an x-ray or used any other diagnostic technique or treatment to determine whether Gamble's pain might be the result of a broken back, even though it is safe to say that most doctors would order x-rays in such circumstances as a matter of course. The Supreme Court held this was not deliberate indifference:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.] 429 U.S. at 106.

A more recent illustrative deliberate indifference case (although strictly speaking for the most part the opinion affirms summary judgment rulings in favor of defendants and is obiter dictum on the standard for a motion to dismiss) is <u>Williams v. Kort</u>, 223 Fed.Appx. 95 (3d Cir.2007). In <u>Williams v. Kort</u>, the inmate plaintiff, Williams, alleged that he injured his knee in June and August 2000 at S.C.I. Coal Township, but despite his complaints of pain and objective signs of injury such as swelling and buckling of the knee was refused an MRI and treated only with pain relievers after x-rays were taken and showed there were no broken bones. Upon transfer to S.C.I. Somerset in August 2001,

6

personnel at Somerset cancelled Williams' pain medication and continued to deny him an MRI, allegedly without examining his knee and despite his description of his symptoms. Eventually plaintiff's pain medication was resumed but it was not until June 2002, after a transfer to S.C.I. Albion, that Williams received an MRI which revealed that he had a bilateral meniscus tear requiring surgery.

The Court of Appeals for the Third Circuit, although affirming the grant of summary judgment for Doctor Kort, the treating physician at S.C.I. Coal Township, observed that a sufficient allegation of deliberate indifference claim had been stated against Doctor Kort because Kort allegedly knew of plaintiff's injury through his continued treatment of Williams and because Kort said he would order an MRI if the injury did not improve, and did not do so. 223 Fed.Appx. at 100. In the same way, the Court of Appeals for the Third Circuit affirmed the grant of summary judgment but took an opportunity to express disapproval of the lower court's Rule 12 dismissal of claims against defendant Lorah, a treating physician's assistant at Coal Township, and defendant Ohler, a treating physician's assistant at Somerset. Allegations that Lorah and Ohler "insisted on courses of treatment they knew were ineffective" were adequate to allege deliberate indifference, according to the appellate panel. 223 Fed.Appx. at 101.

Here, even disregarding the arguably heightened requirements for pleading in the post-Twombly era, what plaintiff alleges is well short of what Williams v. Kort found sufficient. Taking plaintiff's complaint at its best, plaintiff alleges that defendants failed to take steps to confirm promptly that his foot was broken or to examine him adequately, then took their time in prescribing orthotics, then did not provide further specialist consultations. This asserts common law negligence, but unless Estelle v. Gamble is ignored it cannot be stretched to an allegation that defendants knew their course of conduct disregarded the risk of injury to plaintiff, much less insisted on such a course. To the contrary, plaintiff's allegations of his encounter with Jordan allege at most that Jordan incorrectly believed that plaintiff was not seriously injured. Whether plaintiff's alleged lack of swelling when Jordan examined him excuses Jordan's decision not to examine plaintiff further on a Friday and to schedule x-rays for a Monday, and whether it was prudent to take plaintiff's crutches before the x-ray results were back, are points that can be debated by practitioners in the community and are classic questions for a negligence action. But to call Jordan's action deliberate indifference is a conclusion that does not fit the allegations.

Plaintiff's strongest allegations are against Jordan and those are inadequate to state a federal claim. The complaint fails

by far to state any federal claim against the rest of the defendants. Plaintiff's history of his treatment after Jordan prescribed x-rays alleges at most that in hindsight Donegan said he would have done things differently if he had been on the scene[1]. This is quite different from Kort's alleged deliberate indifference in Williams v. Kort: according to the circuit, Kort acknowledged his understanding of the necessity for appropriate action and refused to take it. Here plaintiff, like Gamble in Estelle v. Gamble, alleges that Jordan should have been more aggressive in treating him. That is a malpractice claim, which should be litigated in state court, because the constitution "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986)(An inmate who alleged that he

---

1. Plaintiff clearly is angered by defendants' lack of personal concern for him and the scorn for inmates generally expressed to plaintiff's uncle by Pennsylvania Department of Corrections personnel when the uncle inquired about plaintiff's case. But poor bedside manner is not a violation of the Eighth Amendment. Plaintiff does not even hint what his subsequent health care providers had to do differently as a result of defendants' allegedly improper actions. Defendants could not unbreak plaintiff's foot, and short of indicia (not alleged by plaintiff) that plaintiff needed to be immobilized immediately after the injury to keep him from walking all weekend on a broken foot, one cannot claim that defendants even denied any medical care to plaintiff, much less did so with a culpable state of mind. Plaintiff received x-rays, he saw specialists, he was fitted with orthotics, he was prescribed medication for pain and swelling. Plaintiff's most serious factual complaint is that his care immediately after the injury was inadequate. Yet even plaintiff does not allege that the injury created any obvious need for emergency care or that Jordan missed obviously broken bones.

was injured when he slipped and fell on a pillow negligently left on stairway by a corrections officer stated no federal claim under the Due Process Clause).

Plaintiff has alleged state law negligence claims, but has asserted that he does not need medical expert testimony, by filing certificates of merit under subsection (a)(3) of Pa.R.Civ.P. 1042.3. Plaintiff is almost certainly wrong about his need for expert testimony. However, there is no reason to expend the federal courts' scarce resources in interpreting the substantive law implications of Pennsylvania's procedural rules or in adjudicating the contours of the medical professional exception to sovereign immunity, 42 Pa.C.S.§ 8522(b). Plaintiff's state law claims should be dismissed without prejudice to proceeding under 42 Pa.C.S.§ 5103(b).

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: December 2, 2008

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

    Edwin Wallace EE-1120
    S.C.I. Somerset
    1600 Walters Mill Road
    Somerset, PA 15510