IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWIN WALLACE,                          :
          Plaintiff,               :
    v.                                 :   Case No. 3:06-cv-255-KRG-KAP
TERRY LEE JORDAN, PHYSICIAN             :
ASSISTANT at S.C.I. SOMERSET,           :
          Defendant                :

### Report and Recommendation

#### Recommendation

Plaintiff Wallace is an inmate who claims that while he was incarcerated at S.C.I. Somerset defendant Jordan, a physician assistant, violated the Eighth Amendment and Pennsylvania negligence law in the way he treated and failed to treat broken bones in Wallace's foot. The parties have moved for summary judgment, plaintiff at docket no. 61, defendant at docket no. 57. Defendant's motion should be granted and plaintiff's denied[1].

#### Report

After the motion to dismiss stage, see docket no. 38, docket no. 45, this matter consists of Wallace's deliberate indifference claim and negligence claim against Jordan. I wrote an extensive summary of the factual allegations at the motion to dismiss stage which I can summarize insofar as it concerns

---

1. Plaintiff filed a motion to supplement his motion, docket no. 64, and went ahead and filed the supplement, docket no. 69. Plaintiff has referred to some forthcoming expert witness testimony as a reason for granting his motion or denying defendant's, docket no. 64 at 1, but has not produced any such evidence. In view of the time that has passed I doubt that any exists, but if plaintiff simply forgot to file it he should do so forthwith for the reasons discussed in the report.

Wallace's complaint against Jordan: Wallace alleges that he broke three metatarsal bones in his right foot in an accident in the prison laundry on Thursday, December 2, 2004. Jordan allegedly became liable to Wallace on Friday, December 3, 2004, when after a cursory inspection and without an x-ray of the foot, Jordan told Wallace he had a sprain and should come back for x-rays on Monday, December 6, 2004, put Wallace on lay-in status, and gave him crutches and an ace bandage and a 30 pack of acetaminophen that was five weeks out of code. On Monday, December 6, 2004, plaintiff had x-rays taken, and turned in his crutches as Jordan had directed the previous Friday. Plaintiff alleges that without crutches every step was now excruciatingly painful and within an hour his foot began to swell. On December 8, 2004, another physician assistant (Solarczyk) issued plaintiff a cane, another ace bandage, and ibuprofen, and on December 10, 2008, told Wallace that x-rays showed he had three and possibly four broken metatarsals. Thereafter Wallace was seen by an orthopedic specialist (Kates) at the Somerset Hospital, who allegedly told Wallace that there was some dislocation in the fracture sites and that Kates would have prescribed an open toed shoe or sandal. Wallace saw another doctor (Thomas) at S.C.I. Somerset on February 9, 2005, who cleared Wallace for all activities and told plaintiff he would always experience arthritic pains. Wallace alleges that he indeed

continued to feel pain in his foot through 2005 and continues to feel pain.

This matter comes before the court on a motion for summary judgment. Fed.R.Civ.P. 56 provides that summary judgment is appropriate if the record (pleadings, depositions, answers to interrogatories, admissions and affidavits) shows that there is no genuine issue as to any material fact. Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (internal quotations and citations omitted). The court must construe the facts in the light most favorable to the non-moving party, Doe v. Centre County, 242 F.3d 437, 446 (3d Cir. 2001), but when a plaintiff bears the burden of proving the elements of a claim (as in this case), a defendant may present a prima facie case for summary judgment by "pointing out to the District Court [] that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The plaintiff is then required to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A plaintiff must produce evidence sufficient to show that a reasonable factfinder might, following the applicable substantive law, return a verdict for him. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

3

The applicable substantive law in this case derives from Estelle v. Gamble, 429 U.S. 97, 105 n.10 (1976), which held that prison officials have a duty (imposed by the Eighth Amendment) not to be deliberately indifferent to inmates' serious medical conditions[2]. Jordan does not dispute that a broken bone is a serious medical need but does claim that he was not deliberately indifferent or negligent because there is insufficient evidence that he caused Wallace any injury. It is necessary to examine the record first to see what evidence supports the claim that Jordan's diagnosis was wrong, that is that Wallace's foot was broken, and second the claim that Jordan's treatment decisions were faulty.

The evidence that Wallace broke bones in his foot comes from two sources: Wallace's own say so and the x-ray performed on December 6, 2004 at Jordan's order (confirmed by the medical director at S.C.I. Somerset, Doctor Ghatge) which the reviewing radiologist (Anderson) said gave an impression of "what appears to be a fracture of the distal second third and fourth metatarsals" with "slight displacement at the fracture site." docket no. 60 at 67. This is what led to Ghatge's order for an orthopedic consult. When Doctor Kates saw Wallace on December 23, 2004, he too examined the x-ray and wrote that it showed "a nondisplaced fracture of the

---

2. Wallace's state law negligence claims should be dismissed for failure to file certificates of merit under Pa.R.Civ.P. 1042.3. See Velazquez v. UPMC Bedford Memorial Hospital, 328 F.Supp.2d 549 (W.D.Pa.2004), analyzing Pa.R.Civ.P. 1042.3 in light of Chamberlain v. Giampapa, 210 F.3d 154 (3d Cir.2000).

necks of the second third and fourth metatarsals." docket no. 60 at 63. Kates, it must be noted, in no way altered the care Wallace had been provided by Jordan and in fact his treatment recommendation was that Wallace "stay in a regular shoe." docket no. 60 at id. Kates also recommended a repeat of the x-ray, Ghatge so ordered on December 27, 2004, and follow-up x-rays were taken on January 18, 2005. (In the meantime Jordan saw Wallace and renewed his prescription for anti-inflammatory medicine.) The radiologist who took the January 18, 2005 x-ray (Pessolano) reported "no evidence of fracture or dislocation" in Wallace's foot. docket no. 60 at 72. Wallace has continued to complain of pain in his foot, but subsequent x-rays on May 4, 2006, docket no. 60 at 75 (Anderson reported "no evidence of fracture or dislocation" and "normal right foot"), and June 4, 2008, docket no. 60 at 77 (Castelli reported "no evidence of fracture or dislocation" and "normal right foot") indicate that Wallace's foot is not now injured or even residually abnormal.

Wallace has no evidence that Jordan was indifferent or negligent in his treatment of Wallace's foot because Wallace's claims rest on the factual premises that 1) his foot was broken; that 2) the break was so obvious and the broken foot so obviously needed treatment other than what Jordan did that Jordan can be assumed to have known it; and that 3) Jordan's failure to take this hypothesized alternative treatment caused Wallace injury. Wallace

5

has barely enough evidence to create a genuine issue of fact as to the first of these three points - that his foot was broken in December - even though, if his foot was broken, the break had healed to a point that it was indistinguishable on follow-up x-rays taken within about three weeks. But to prove Jordan or any caregiver liable Wallace must do more than make it plausible that he had a broken foot, he must make it possible for a finder of fact to conclude from competent evidence that Jordan **culpably** (knowingly or negligently) missed the correct diagnosis, and further, that this led Jordan to some act or omission which caused Wallace injury. As the x-ray record shows, within the month Wallace's foot showed no evidence of fracture. Wallace complains of pain but simply shows no injury, much less one caused by some act or omission by Jordan.

For injury, Wallace complains that he was without crutches for 48 hours between December 6 and December 8 2004, and conjectures that he developed the calcaneal spur referred to by Dr. Pessolano, docket no. 60 at 72, as a result of having to walk around on his broken foot. docket no. 62 at 8. This is beyond grasping at straws. Unless a medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish the standard of care, the lapse in meeting the standard

6

of care, and causation. See Brannan v. Lankanau Hospital, 490 Pa. 588, 417 A. 2d 196, 201 (1980), quoting Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794 (1970); Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987), aff'd, 845 F.2d 1011 (3d Cir.1988). As Estelle v. Gamble, 429 U.S. 97, 104 n.10 (1976), suggests an inmate need not provide expert testimony in every claim of deliberate indifference. An inmate who presented with a compound fracture of the radius or ulna sticking through the skin can claim without need for expert witnesses that his break should be recognized and treated as such. The analysis in Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986), even though it applied New Jersey law in an FTCA claim, is illustrative. There, expert testimony was not necessary to prove that the government's action caused plaintiff's injury because the causal mechanism was obvious: plaintiff was driving his truck, a Postal Service jeep struck him head on, and plaintiff's knees began to hurt immediately after the collision. However, Wallace's claim that because his metatarsals were "slightly displaced," Jordan is liable because he diagnosed only a sprain is not obvious. Wallace's claim that the order to turn in his crutches caused him to develop a spur is even less obvious. Wallace needs expert testimony on the standard of care, on the proof of injury, and on the causation of injury. Wallace's lack in all three areas is fatal to his claim.

7

Perhaps as a makeweight Wallace also argues that Jordan's dispensing of out of code anti-inflammatory medication constitutes negligence. docket no. 62 at 8. Even if Jordan had completely denied Wallace any over the counter pain reliever it would not constitute a claim because denial of over the counter pain relievers for transitory pains is nothing like denial of anesthesia during surgery or other instances in which the Eighth Amendment imposes liability for indifference to an inmate's suffering of pain. But leaving that aside, again Wallace is no more qualified to opine on the efficacy of acetaminophen with an expired code than I am. I know that for some medicines codes are true deadlines beyond which the medicine loses its potency, other codes are more like "sell-by" dates on products, and still other codes are pure marketing ploys designed to move stock. Which applies to the code on the acetaminophen given to Wallace by Jordan is not a matter that Wallace can testify to, any more than he can opine on the origin of his calcaneal spur.

Judgment should be entered for the remaining defendant.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 12 February 2010

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

        Edwin Wallace EE-1120
        S.C.I. Somerset
        1600 Walters Mill Road
        Somerset, PA 15510